UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

IN RE: THE COMPLAINT AND      :
PETITION OF LAKE CHAMPLAIN    :
COMMUNITY SAILING CENTER,     :
INC. AS OWNER OF CLUB 420     :    Case No. 2:13-cv-251
SAILBOAT FOR EXONERATION      :
FROM OR LIMITATION OF         :
LIABILITY                     :

## OPINION AND ORDER

This admiralty case arises out of injuries allegedly suffered by Nathalie Kelly during a sailing lesson on Lake Champlain in 2010.  The lesson was conducted by staff of petitioner Lake Champlain Community Sailing Center, Inc. ("Petitioner" or "LCCSC").  Claiming negligence and loss of consortium, Ms. Kelly and members of her family filed an action for damages in state court.  LCCSC subsequently filed a petition in this Court seeking exoneration, or a limitation of its liability to the value of the sailboat, pursuant to the Limitation of Liability Act, 46 U.S.C. § 30505(b) ("Limitation Act" or "LOLA").  As a result of LCCSC's filing, the state court action has been stayed.

Ms. Kelly now moves to dismiss the petition, arguing that LCCSC is not entitled to relief under the Limitation Act.  Also pending is LCCSC's motion for summary judgment on the basis of a release signed by Ms. Kelly.  For the reasons set forth below, the motion to dismiss is DENIED, and a response to the summary judgment motion shall be filed on or before September 1, 2014.

<u>Factual and Procedural Background</u>

On June 29, 2010, Nathalie Kelly participated in a sailing lesson provided by LCCSC.  According to Ms. Kelly's statement of claim (ECF No. 4 at 3-13), the morning weather forecast that day warned of isolated afternoon thunderstorms and wind gusts up to 25 miles per hour.  The forecast for Lake Champlain predicted winds over 10 knots and waves of one to two feet, with higher winds and waves in the vicinity of the thunderstorms.  Ms. Kelly's evening sailing class encountered a storm, and at 6:45 p.m. her boat capsized.  The class instructor, driving a motorized boat, allegedly instructed Ms. Kelly and a classmate to try to right the sailboat.  Their efforts were unsuccessful, and they were ultimately rescued by the United States Coast Guard. Ms. Kelly claims to have suffered permanent injuries as a result of the incident.

In June 2013, Nathalie and Selina Kelly, and Nathalie Kelly as parent and next friend of Adrian Kelly, a minor, filed suit in the Chittenden Civil Division of the Vermont Superior Court seeking damages (the "Kelly lawsuit").  The Complaint alleges that Ms. Kelly was an inexperienced sailor when she sustained her injuries, and that LCCSC's agents should have known that a storm was approaching; should have known that inexperienced sailors should not be sailing in an area where a storm has been forecast; should have had more than one safety boat on the water; should

2

have provided more instructors; should have adequately trained the instructor; and should have rescued Ms. Kelly from the water rather than instructing her to try to right the boat.

On September 13, 2013, LCCSC filed in this Court a petition under the Limitation Act for exoneration or limitation of liability with regard to the Kelly lawsuit. The petition asserts that "[a]ny and all injuries and damages allegedly resulting from the incident were not caused by or attributable to any fault, design, neglect, or want of due care on the part of [LCCSC], or anyone for whom [LCCSC] may be responsible," and that any damage "occurred without [LCCSC]'s privity or knowledge." ECF No. 1 at 2. Accordingly, LCCSC: (1) denies liability and demands exoneration, and (2) in the alternative, claims that under the Limitation Act its liability is limited to the value of the sailboat. LCCSC submits that the boat's value after the incident was approximately $5,000. ECF No. 1-1 at 2. As noted above, the state court action has been stayed as a result of LCCSC's filing in this Court.

Respondents Nathalie Kelly and her children, Selina and Adrian, (collectively "Respondents") have moved to dismiss LCCSC's petition. Respondents argue that the "savings to suitors" clause in 28 U.S.C. § 1333 preserves their right to proceed in state court, and that LCCSC is not entitled to limit its liability because LCCSC's "privity or knowledge" is

3

established in the pleadings.  LCCSC disputes whether privity or knowledge is established, and has filed a motion for summary judgment on the basis of a release signed by Ms. Kelly prior to her lesson.  Respondents have moved the Court for leave to respond to the summary judgment motion within 15 days after the Court rules upon their motion to dismiss.

Discussion

I.   Legal Standard

Respondents submit their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Because they filed their motion to dismiss after filing an answer, the motion must be considered under Fed. R. Civ. P. 12(c) as a motion for judgment on the pleadings.  *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  The applicable legal standard, however, is the same under either rule, *see Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006), requiring the Court to determine whether the complaint states "'a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When considering a motion to dismiss, a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."

*Faber v. Metro. Life*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  While factual allegations in the complaint are assumed to be true, the same assumption does not apply to legal conclusions.  *Iqbal*, 556 U.S. at 678.  Review of a motion to dismiss "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

II.  The Limitation Act

The Limitation Act limits the liability of a boat owner for "any loss, damage, or injury by collision . . . done, occasioned, or incurred without the privity or knowledge of the owner" to "the value of the vessel and pending freight."  46 U.S.C. § 30505(b).  The Act, which dates back to 1871, was designed "to encourage ship building and to induce capitalists to invest money in this branch of industry."  *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001) (citing *Norwich & N.Y. Transp. Co. v. Wright*, 80 U.S. 104, 121 (1871)).  Although "the inclusion of pleasure craft in the limitation provision seems rather unrelated to the legislative goal of fostering investment in commercial shipping," the Second Circuit has concluded that "pleasure craft" as well as commercial vessels "are subject to the Act's

5

limitation on liability." *In re Guglielmo*, 897 F.2d 58, 60-61 (2d Cir. 1990).

The LOLA establishes a procedure by which a boat owner can deposit a sum equal to the value of its ownership interest in the vessel and file suit to limit its liability.[1]  Once the initial procedural requirements of a LOLA filing have been satisfied, the federal court conducts a proceeding known as *concursus*.  The Supreme Court has described *concursus* as follows:

> In these proceedings, the court, sitting without a jury, adjudicates the claims.  The court determines whether the vessel owner is liable and whether the owner may limit liability.  The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Lewis*, 531 U.S. at 448.  The *Lewis* decision acknowledged that the *concursus* process is in "some tension" with the "savings to suitors" clause set forth in 28 U.S.C. § 1333(1).  Section

---

[1]  The owner of a vessel must bring a civil action in federal district court within six months after a claimant gives the owner written notice of a claim.  46 U.S.C. § 30511(a); Fed. R. Civ. P. Supp. R. F(1).  The limitation of liability complaint must state the facts on which the right to limitation is asserted, as well as any facts that the court would need to determine the amount of limited liability.  Fed. R. Civ. P. Supp. R. F(2).  The owner must then either deposit with the court or transfer to a court-appointed trustee an amount equal to the owner's interest in the vessel and an amount fixed by the court.  *See* 46 U.S.C. § 30511(b).  Once the owner has brought the limitation action and complied with subsection (b), "all claims and proceedings against the owner related to the matter in question shall cease."  *Id.* § 30511(c).  The federal court must then provide notice to all persons asserting the claims for which the owner seeks limitation, and must file their claims against the owner in the federal action.  In this case, neither party has raised any issue with respect to compliance with these procedures.

1333(1) provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  28 U.S.C. § 1333(1).  Accordingly, the savings to suitors clause "gives suitors the right to a choice of remedies," including a jury trial in state court, while the LOLA "gives vessel owners the right to seek limitation of liability" and a determination of negligence by means of a federal bench trial.  *Lewis*, 531 U.S. at 448.

In recognition of this tension, courts have identified at least two situations in which *concursus* is unnecessary.  In the first, there is no need to limit liability because the aggregate value of the injured party's claims is less than the value of the vessel and its cargo.  *See Lewis*, 531 U.S. at 450; *Dammers*, 836 F.2d at 755 (collecting cases).  In the second, when a "lone claimant" files an action against a shipowner seeking an amount in excess of the limitation fund, that claimant may pursue his or her personal injury claim in state court provided that the claimant stipulates to "the admiralty court's exclusive jurisdiction to determine all issues relating to the limitation of liability."  *Dammers*, 836 F.2d at 755.  These exceptions do not apply here, as according to the Respondents their claims "could potentially exceed [LCCSC's] interest in the Vessel,"  ECF

7

No. 13-1 at 2, there are multiple claimants, and there is no evidence in the record of any relevant stipulations.[2]

Respondents argue that *concursus* is not warranted because LCCSC's admissions in the state court pleadings establish its privity or knowledge, thereby barring it from seeking a limitation of liability.  Typically, a court will first determine negligence and then proceed to the question of privity or knowledge.  *See Otal Invs. Ltd. v. M/V Clary*, 673 F.3d 108, 115 (2d Cir. 2012) (describing "two-step analysis").  "Blind adherence" to this approach, "however, ignores a claimant's important rights to a jury trial and to the full compliment [sic] of common law remedies available in state court."  *In re Martin*, 18 F. Supp. 2d 126, 128 (D. Mass. 1998).  The Court will therefore consider Respondents' contention that LCCSC's petition should be dismissed on the basis of privity or knowledge, without first deciding the question of negligence.

III. Privity or Knowledge

Privity or knowledge is "often defined as 'complicity in the fault that caused the accident.'"  *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1159 (2d Cir. 1978) (quoting *Nuccio v. Royal Indemnity Co.*, 415 F.2d 228, 229 (5th Cir. 1969)).

---

[2]  With regard to loss of consortium claims by family members, the Second Circuit has allowed such claimants to proceed with common law claims in other forums if they stipulate to the priority of their claims against the shipowner(s).  *Dammers*, 836 F.2d at 756.  Again, no such stipulations have been presented here.

"Privity or knowledge is thus not established by mere vicarious liability, but the concept does prohibit limitation of liability in situations where the vessel owner knew of a dangerous condition onboard the vessel or hired an incompetent crew." *In re Miller Marine Servs., Inc.*, 2013 WL 5460937, at *3 (E.D.N.Y. Sept. 30, 2013) (citing *In re Messina*, 574 F.3d 119, 126–28 (2d Cir. 2009)); *see also In re City of New York*, 522 F.3d 279, 283 (2d Cir. 2008) ("[t]he statute . . . alters the normal rules of vicarious liability.  Instead of being vicariously liable for the full extent of any injuries caused by the negligence of the captain or crew employed to operate the ship, the owner's liability is limited . . . unless the owner himself had 'privity or knowledge' of the negligent acts.").  "Where the owner of a ship is a corporation, the corporation is not entitled to limit its liability 'where the negligence is that of an executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred.'"  *In re City of New York*, 522 F.3d at 283 (quoting *Coryell v. Phipps*, 317 U.S. 406, 410 (1943)).

Respondents contend that LCCSC has admitted facts about the conduct of its employees, and in particular Ms. Kelly's sailing instructor, sufficient to establish privity or knowledge.[3]  Those

---

[3]  Respondents also suggest that the LOLA may not apply since LCCSC is being sued for its sailing school operations, not its ownership of a vessel.  At least one court has applied the LOLA to a

facts include Ms. Kelly's participation in an LCCSC sailing class, her capsize, the directions from her instructor, and her rescue by the Coast Guard.  LCCSC has admitted that it knew or should have known to check the weather, but denies that inclement weather was forecast.  LCCSC further denies that Ms. Kelly was "under the supervision, direction, and instruction" of its employees and/or agents at the time of the incident, and denies any allegation of misconduct, including the failure to properly train its instructors.  ECF No. 13-1 at 7, 18.

Acknowledging that a corporate defendant's privity or knowledge arises out of the negligence of a supervisor, ECF No. 13 at 9, Respondents argue that Ms. Kelly's sailing instructor "was the employee supervising the beginner class outing on Lake Champlain that day," and that her actions are therefore "imputable to [LCCSC]."  ECF No. 19 at 3.  In designating the sailing instructor as a supervisor, Respondents cite *Great Lakes Dredge & Dock Co. v. City of Chicago*, 3 F.3d 225 (7th Cir. 1993) (hereinafter "*Great Lakes*") for the proposition that a court determining privity or knowledge may "divide [the corporation's] employees into two groups.  One consists of corporate managers vested with discretionary authority.  The other contains

---

sailing lesson accident without questioning the statute's applicability.  *In re Longshore Sailing School, Inc.*, 2010 WL 326210, at *1 (D. Conn. Jan. 19, 2010).  It has also been held that sailing schools are subject to admiralty law.  *See Oran v. Fair Wind Sailing, Inc.*, 2009 WL 4349321, at *5 (D.V.I. Nov. 23, 2009).

ministerial agents or employees." *Great Lakes*, 3 F.3d at 231. Respondents contend that because the sailing instructor's work was not merely ministerial, her actions gave rise to corporate privity or knowledge.

Respondents' argument with respect to supervisory liability is not supported by the parties' pleadings.  On a motion filed pursuant to Rule 12(c), judgment is only appropriate "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.V. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  The pleadings in this federal action consist of the petition for limitation of liability and Respondents' answer, neither of which sets forth sufficient facts to establish potential liability of a person in a supervisory role. Specifically, LCCSC's petition under the Limitation Act denies negligence, privity, or knowledge, and Respondents' answer is correspondingly sparse.  If the Court considers the more-detailed state court pleadings, as incorporated into the federal pleadings by reference, LCCSC has denied any supervisory role by its employees and/or agents.  LCCSC has also denied a failure to train, a failure to adhere to the weather report, and a failure to provide a sufficient number of safety boats and instructors. Accordingly, even if the Court were to accept the supervisory/ministerial rubric set forth in *Great Lakes*, the

11

pleadings do not present undisputed facts in support of dismissal. *See In re Franz*, 2014 WL 1031574, at \*3 (N.D.N.Y. Mar. 17, 2014) (holding that allegation in complaint that event occurred without privity or knowledge is sufficient to withstand motion to dismiss).

Furthermore, in *In re City of New York*, the Second Circuit focused upon the potential liability of an "'executive officer, manager or superintendent'" when considering a corporation's privity or knowledge. 522 F.3d at 283 (quoting *Coryell*, 317 U.S. at 410); *see also Great Lakes*, 3 F.3d at 232 ("Great Lakes is vicariously liable for the negligence of all of its employees. But it will be charged, for purposes of the Limitation Act, with the privity and knowledge only of certain managerial employees."). In *Coryell*, the Supreme Court noted "the search in those cases to see where in the managerial hierarchy the fault lay." 317 U.S. at 411. In this case, the pleadings do not reveal LCCSC's "managerial hierarchy" such that the Court can determine whether a sailing instructor's actions may be considered within the privity or knowledge of the owner.

Some courts have determined that a petition for limitation of liability should not be dismissed under Rule 12. *See, e.g., In re Matter of Weeks Marine, Inc.*, 2011 WL 3273611, at \*4 (E.D. Pa. July 29, 2011) (holding that determination of privity or knowledge "is a matter to be stowed until the bench trial"); *cf.*

12

*Complaint of Ingoglia*, 723 F. Supp. 512, 515 (C.D. Cal. 1989) (noting that determination of limitation is inappropriate on a motion to dismiss).  While this Court declines to adopt such a *per se* rule, this case illustrates why dismissal on the basis of Limitation Act pleadings is generally premature.  Given the disputed facts and the emphasis in the law upon supervisory employees, the Court cannot conclude at this time that LCCSC will be unable to claim a limitation of liability.  Accordingly, Respondents' motion to dismiss, construed as a motion for judgment on the pleadings under Rule 12(c), is DENIED.

Conclusion

For the reasons set forth above, Respondents' motion to dismiss (ECF No. 13) is DENIED.  Respondents' motion for extension of time to respond to LCCSC's motion for summary judgment (ECF No. 12) is GRANTED, and their response to the summary judgment motion shall be filed on or before September 1, 2014.

Dated at Burlington, in the District of Vermont, this 13th day of August, 2014.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge